## THE FARRAGUT.

The usually obligatory rule of navigation, which requires a special look-out, does not apply to a case where the collision or loss could not have been guarded against by a look-out, and where it is clear that the absence of a look-out had nothing to do in causing it.

APPEAL from the Circuit Court for the Southern District of Illinois.

Clark libelled the steamer Farragut for causing the destruction of the canal-boat Ajax and her cargo on the 8th of March, 1866. The Buckeye Mutual Insurance Company having paid Clark $1500 insurance on the canal-boat, came in by petition, and were made parties libellant, and subrogated to Clark's rights in the cause to the amount thus paid. The principal charges of the libel were, that the steamer Farragut, being engaged in running between Beardstown, Illinois, and St. Louis, Missouri, on the Illinois and Mississippi Rivers, on the 7th of March, 1866, took the canal-boat Ajax, loaded with wheat, corn, and oats, in tow at Beardstown; that the owner or master of the Farragut contracted to tow the Ajax safely to St. Louis and return for $130, and caused it to be lashed to the side of the steamer, and proceeded safely down the Illinois River until about four o'clock in the morning of the 8th of March, when, in attempting to pass through the railroad bridge at Meredosia, the steamer was so carelessly and negligently managed that she caused the Ajax to come in contact with the pier of the bridge, whereby boat and cargo sank and became a total loss.

The answer alleged that the canal-boat was unsound and rotten; that the only contract between the parties was a verbal contract to tow the Ajax to St. Louis for $65, made

with reference to the general usage on the Illinois and Mississippi Rivers, by which contracts for towing, in the absence of special agreements, are contracts to tow safely, except the usual dangers and hazards of river navigation, and do not involve the liabilities of a common carrier. The answer denied that the steamer was carelessly and negligently managed, or that the loss of the Ajax was attributable to the unskilfulness, negligence, or fault of any person having charge of her, and alleged that it was due to the usual dangers of river navigation; that the bridge in which the loss occurred is located at a bend in the river, which there changes its course from southeast to southwest; that this bend rendered it difficult to pass the draw of the bridge at any time without striking the eastern pier; that this difficulty was greatly enhanced at high water by a cross-current which strikes it diagonally across the draw, and that at the time of the loss complained of this current was at its worst; that the captain of the steamer himself, one Ebaugh, who was a skilful pilot of the river, took the helm on this occasion, and was steering the vessel when the accident occurred; but that, by the strength of the diagonal current, she was forced towards the piles protecting the east pier, with which the canal-boat came into contact and was stove and sunk, without any want of care or skill on the part of the owner or those in charge of the steamer. It was further alleged that the said piles formerly yielded to pressure, so that a sound boat rubbing against them received no serious damage therefrom; but that, during the preceding winter, the piles had been stiffened up with braces, so that when the unsound and rotten timbers of the Ajax came in contact with them they were crushed.

Both courts below were of opinion that the defence was sustained by the evidence, and decreed against the libellant. That party now brought the case here.

*Mr. Laurence Proudfoot, for the appellant:*

Captain Ebaugh was in the wheel-house, and acted in the capacity of wheelsman and look-out. Now the law says that

there must be a man specially detailed, to have a trust-worthy and constant look-out *stationed at the part of the vessel best adapted for that purpose,* and whose *whole* business is to. keep such look-out; that an omission in case of collision would be *primâ facie* evidence of fault; that the wheel-house is not a proper place for such look-out, nor the hurricane-deck, and that the captain of the watch is not such a look-out as is required by law.*

These requirements of the law extend to all classes of steamers and vessels, including especially those of steamers engaged in towing.†

It is asserted by the steamer that, in order to recover, it must be shown affirmatively by us (though the steamer vio-lated the law in regard to a look-out) that the want of the look-out was the cause of the collision. We look in vain in *any* of the already quoted decisions for such a qualification of the law. No such qualification can be found. Certainly, we having made a *primâ facie* case against the steamer, it devolves on *it* to show by largely preponderating evidence, that the neglect to have a look-out did not in the slightest degree tend to the collision and loss.

*The Ottawa,*‡ one of the latest cases on this subject, goes further in our favor. Clifford, J., there says, in giving the court's opinion, what had been said many times before, as follows:

Steamers are required to have constant and vigilant look-outs

---

* New York *v.* .Rea, 18 Howard, 225; St. John *v.* Paine, 10 Id. 585; Chamberlain *v.* Ward, 21 Id. 570; James Gray *v.* John Fraser, Ib. 191; Haney *v.* Baltimore ,Packet Co., 23 Id. 287; New York and Baltimore Trans. Co. *v.* Philadelphia and Savannah Steam Nav. Co., 22 Id. 471; The Ottawa, 3 Wallace, 273.

† Sturgis *v.* Boyer, 24 Howard, 118, 120; Goslee et al. *v.* Shute's Exec-utor, 18 Id. 467; Culbertson *v.* Shaw et al., Ib. 587; New York *v.* Rea, Ib. 225; New York and Baltimore Trans. Co. *v.* Philadelphia and Savannah Steam Nav. Co., 22 Id. 461; Fretz et al. *v.* Bull et al., 12 Id. 471; Pearce *v.* Page, 24 Id. 228; Steamer New Philadelphia, 1 Black, 62, 74; Wells *v.* Steam Navigation Co., 4 Selden, 375; Ashmore *v.* Penn. Trans. Co., 4 Dutcher, 180; Alexander *v.* Greene, 7 Hill, 533.

‡ 3 Wallace, 273.

stationed in proper places on the vessel, and they must be actually employed in the performance of the duty to which they are assigned. Proper look-outs are competent persons *other than the master and helmsman*, properly stationed for that purpose on the forward part of the vessel.

After repeating the same idea several times, and citing cases for each presentation of it, he says, in reference to the particular case (where the question was, whether the master, who was then engaged in navigating the vessel, was a competent look-out):

It is clear that the propeller did not have any proper look-out.

And in reference to the cases cited:

We adhere to those decisions, *without abatement or qualification*.

If this is true, if the statement was correct that the court would adhere, " without abatement or qualification," to the decisions cited in that case, then the court decided that the rule about look-outs was one so very important that they would hold to it in all cases as a general rule, and not regard evidence to show that in the particular case the presence of a special look-out would not have altered the result.

*Mr. Trumbull, contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

The District and Circuit Courts were both satisfied that the evidence in the case fully supported the defence, and this court concurs in that conclusion, unless the position strenuously insisted on here by the appellants' counsel can be maintained, to wit, that the absence of a special look-out is evidence of negligence, which renders the owners of the steamer *primâ facie* liable.

It is undoubtedly true that the absence of a special look-out would, in many cases, perhaps in most cases, be regarded as evidence of great negligence. The last rule prescribed

by Congress by the act of April 29, 1864,* declares that
"nothing in these rules shall exonerate any ship, or the
owner, or master, or crew thereof, from the consequences of
any neglect to carry lights or signals, or of any neglect to
keep a *proper look-out*," &c.; thus intimating that "a proper
look-out" is one of the ordinary precautions which a careful
navigation involves. But it would be against all reason to
contend that the master or owners of a vessel should be
made liable for the consequences of an accident by reason
of not having a special look-out where the collision or loss
could not have been guarded against by a look-out, or where
it is clear that the absence of a look-out had nothing to do
in causing it. Suppose that a sunken rock, dropped from a
cargo of quarried stone, and unknown to the navigators of
the channel, were the cause of the accident, could the pres-
ence of a look-out have the least tendency to guard against
it? A hundred such instances might be suggested where
the presence or absence of a look-out would have no influ-
ence whatever on the happening of the catastrophe. We
are not to shut our eyes and to accept blindly an artificial
rule which is to determine, in all cases, whether the navi-
gator is liable to the charge of negligence in causing any
loss or damage that may happen. A look-out is only one
of the many precautions which a prudent navigator ought
to provide; but it is not indispensable where, from the cir-
cumstances of the case, a look-out could not possibly be of
any service. The object of a look-out is to discover dangers
that are unknown, the advance of an approaching vessel,
the appearance of a light on the coast, the discovery of a
dangerous object, and many other things, the existence and
presence of which could not be so easily and quickly known
to the pilot as to a person whose sole business it was to
make and communicate such discoveries. The cases referred
to, taken in connection with the particular circumstances of
each, cannot receive a different interpretation.

In the case before us no look-out could have been of any

---

* 13 Stat. at Large, 61.

possible advantage. No look-out would have ventured, or presumed, to interfere with the captain, who had the helm at the time. It would probably have been rather an interference and a hindrance to the safe management of the boat for any third person in such an exigency to have diverted his attention. The obstacle was there in plain sight. Its position was better known to the captain than to any other person. No look-out could have aided him in the emergency. But, if a look-out were needed, we have the evidence of the mate that he was on the hurricane-deck watching the course of the steamer at the time; and, had it been possible for any look-out to have been of any service, he would have rendered it. Clark, the captain of the canal-boat, was also on the watch as well as Nolte, the ship's carpenter, and one of the owners of the steamer. It is perfectly evident that the absence of a special look-out had nothing at all to do with the happening of the accident, and therefore it can have nothing to do with fixing the liability of the parties.

It is also evident that the loss was occasioned by the violence of the cross-current, which was due to the great height of water prevailing at the time, and was therefore the result of one of the ordinary dangers of river navigation.

DECREE OF THE CIRCUIT COURT AFFIRMED WITH COSTS.