Allen, J.
It is claimed by the counsel for the appellant, that the referee erred in ruling and deciding that the plaintiff's were free from negligence contributing to the injury, and that the Supreme Court, in affirming the judgment, were in an error in treating the case as one depending upon a conflict of testimony in which the conclusions of the referee were final. It is urged that the contributory negligence of the plaintiffs was established by the nn controverted facts as proven, and that the finding of the referee exculpating the plaintiffs was wholly without, and unsupported by evidence. The chief reliance of the counsel in support of this proposition is upon a supposed non-compliance by the plaintiffs with certain prudential regulations to which the steamer of the plaintiffs was subject under the laws of the United States and of this State. (13 U. S. Stat., 58, § 1; 1 R. S., 683.) The deficiencies relied upon are the want of a “ look-out” on the plaintiffs’ steamer, the Telegraph ; the fact that she was at the time of the collision in charge of a pilot who was not licensed, but who was licensed soon thereafter upon an application made before; that she did not then exhibit and carry the lights *296 prescribed by act of Congress for steamships in the service in which she was then engaged, and that she was on the wrong side of the river, and undertook to pass the defendant’s steamer upon the port rather than the starboard side.
The mere omission of any or all the safeguards provided bj the federal and State legislatures, and the boards authorized to ordain and make laws upon the subject, and a disregard of the laws of the sea or of the waters upon which the vessel may be, do not, per se, place a vessel thus derelict out of the protection of the law and at the mercy of a wrongdoer, and necessarily leave her remediless for injuries sustained while thus inattentive to 'laws enacted to secure greater safety in the navigation of the high seas and navigable rivers. The most that can be claimed is that a non-compliance with legal regulations may authorize a presumption, in the absence of evidence that a collision may have resulted from other causes, that it was attributable to such non-compliance, and the absence of the statutory precautions. If there is evidence tending .to prove that a collision and consequent injury was caused solely by other means, or the negligent or wrongful acts of others, it becomes a question of fact, and the circumstance that the injured vessel was not manned, or did not carry the lights, or take the course prescribed by law for vessels in the same situation, is to be considered as one of the circumstances to be taken into consideration in determining the liability of the parties, but not as of itself necessarily in all cases controlling or decisive. (Hoffman v. Union Ferry Co., 47 N. Y., 176; Whitehall Trans. Co. v. N. J. Stbt. Co., 51 id., 369; The Farragut, 10 Wall., 334.) When the want of a look-out, or the omission to comply with any other statutory regulation or precautionary measure, directly causes or contributes to the injury, it is fatal to the claim of the injured vessel to recover compensation. (Thorp v. Hammond, 12 Wall., 408.) It is claimed the plaintiffs’ vessel was in fault in all the respects mentioned. The fact is found by the referee, upon competent and sufficient evidence, that the loss and injury was not the result of such fault, but of other *297 canses. The fact, which is undisputed, that each of the colliding vessels was actually seen from the other, and the character of each and the business in which it was engaged distinguished before they met, and for a long distance as they approached each other, and under circumstances making it possible to avoid a collision, and imposing the duty of each so to direct its course as to avoid the other, renders the question of a look-out upon, and of the lights 'carried by either, as well as the other circumstances relied upon, comparatively unimportant except as they are among the facts to be considered in determining the question of actual negligence and the responsibility of the vessels respectively for the collision.
The referee has, in his detailed and circumstantial report, evidently carefully weighed the evidence, and given every part of it due consideration. There was as usual in cases of this character a great discrepancy in the testimony of the witnesses examined in behalf of the respective parties, and the conflict in the material portions of the evidence is very marked. It was the province of the referee to harmonize and reconcile the conflicting evidence so far as could be done, and when it was irreconcilable to pass upon the credibility of the witnesses, and the force and effect to be given to all the evidence, and, deciding where the truth lay, find the facts as warranted by the testimony. This he has done, and his conclusions are final upon a review of his judgment in the court. He has found upon evidence that if believed, although contradicted by some of the witnesses, justified his conclusions, that the plaintiffs did carry and have in their proper places, clearly visible, the prescribed signal lights, indicating the character of the vessel, the nature of the business in which she was engaged, and her position and general course and direction; that she had no look-out, except a deck-hand, and that she was in charge of a competent pilot, although it is said he was not at the time actually licensed by the proper board. He has also found that the plaintiffs’ steamer, with a tow of several canal boats, was passing down the river at flood-tide, to the east of the center of the channel of the *298 river, and consequently to the left of the defendant’s steamer going up the river, and which before the collision and when the vessels were first sighted by each other, was quite to the west of the center of the channel, but heading toward the plaintiffs’ steamer. The steamers were so far-separated, the Telegraph to the east and the Drew to the west of the center of the channel, that had each kept on the side of the channel in which they then were, there could have been no collision. The navigable channel at the point of collision was more than 1,200 feet wide, and the Telegraph was sunk less than 500 feet from the eastern boundary of the channel. The Telegraph keeping on its course down the river at the rate of some four miles or thereabouts per hour, and the Drew coming up at the rate of some fourteen miles or more per hour, heading in an easterly direction, which the referee finds was not altered, resulted in the collision, the Drew striking the Telegraph on her starboard bow, from twenty to twenty-five feet back of her bow, and sinking her immediately. The manner in which the Telegraph received the blow of the Drew, shows very conclusively that she had not, as-claimed by the defendant, changed her course immediately before the collision,-and that the Drew must ’have been headed to the east, and nearly directly across the bow of the Telegraph, and that the vessels could not have hit each other “ head on ” or directly in the bows, or nearly so, as claimed by the defendant. It is true there is some conflict in the evidence upon this point, hut the weight of the testimony is with the referee ■ and in favor of the plaintiffs. But little significance or force is to he given to the evidence as to the signals given by the two vessels, to indicate the side upon which they respectively proposed to pass each other. The signal given by the Telegraph by two whistles, indicating that she proposed to keep in her course and pass to the left of the Drew, was not heard on the latter vessel; and the signal by one whistle from the Drew, indicating an intention to pass to the east or right of the Telegraph, was not heard on that steamer, unless the whistle which some of the wit *299 nesses on the part of the defendant say was blown when opposite Feries’ point, some distance below the point of collision, was the same heard by the plaintiffs’ witnesses and described by them as a single “ toot,” just before the vessels came together. But whether this be so or not, or whether the single whistle was blown by the Drew at Feries’ point or above that point, is not material. If blown at Feries’ point it was not heard on the Telegraph, and if the whistle or the “ toot” were the same, it was too late to influence the action of the Telegraph or to enable her to avoid the collision. Upon the facts established, as found by the referee, the Drew was clearly in fault and liable for the loss of the Telegraph. There is no “ rule of the road ” which requires vessels or steamers in all cases and under all circumstances, to j)ass each other on the right. Each must take such a course and direction as will be least likely to injure the other, and will be best calculated to avoid a collision, and that vessel or steamer which has the greatest facilities for choosing and taking its adopted course, the most facile and available motive power, and consequently the greater control over its own movements is called upon to give the preference to the other, and yield to it in the choice of routes. This rule is applied to meet the necessities of individual cases resulting from the state of the wind or tide, as well as to the meeting or passing of vessels propelled by steam by those under sail, and the meeting of steamers unincumbered and free, with those incumbered with tows or other hindrances. (The Syracuse, 9 Wall., 672.) It was the duty of the Drew to exercise proper caution in her approach to the Telegraph, and with full power over her own movements, and with ample room to pass the Telegraph and her tow on the west, it was her duty to do so; and the referee properly held, upon the facts as found, that the injury was caused solely by the negligence of those in charge of the Drew. The latter vessel, receiving-no response to the signal which it was claimed was given to the Telegraph to pass to the right, and, as she approached that vessel, there being no indications of an intent to pass to *300 the right, it was culpable negligence for her to attempt,to cross her bow, and insist upon her right to the easternmost passage. It follows, that the facts which the defendants asked the referee to find, in respect to the meeting of ..the Drew with the Connecticut, and that the single whistle t ;was blown at Feries’ point by the Drew, wholly immaterial. Had both facts been found as requested, the result would have been the same. All the cases recognize the general rule, that the duty of vessels meeting each other depends upon, the circumstances under which they meet,' and. the peculiar condition and difficulties of the navigation. What would be allowable and right under some circumstances, might be grossly culpable under other conditions; (The St. John, 7 Blatch., 220.) In this case there was no difficulty in the navigation to embarrass the Drew, and no crowd of vessels, making it necessary for each to adhere strictly to the “ rule of the road,” which is ordinarily to be followed, and none of the conditions were present which influenced and led to the judgment in the cases relied upon by tfie counsel for the defendant, as in The Johnson (9 Wall., 146), and the other cases cited by him.
The rulings of the referee in the admission and exclusion of evidence touching the custom and usage governing1 the lights carried by steam tow-boats, and the navigation of the Hudson river, were not material as affecting the result. The' question was narrowed down to one of actual negligence, in view of the position in which the vessels actually were at the time of the injury, each knowing the position of the other, and bound to act in reference to it, and their respective facilities for avoiding the collision.
There was no error in the rulings as to evidence bearing upon the measure of damages. It was competent for the plaintiffs to prove that the Telegraph could not be raised, or that to raise her would cost more than the value of the wreck when raised, and it was not competent for the defendant to prove the value of the Telegraph by show *301 ing the value of other vessels with which she might be compared.
The judgment must be affirmed.
All concur, Folgee, J., .in result.
Judgment affirmed.