## BUNDY v. NEWTON.

*(Supreme Court, General Term, First Department. June 29, 1892.)*

1. CHAMPERTY AND MAINTENANCE—COMMON LAW—ABOLITION.

The common law relative to champerty and maintenance has been abolished in New York except so far as it may be embodied in the statutes having reference to certain cases affecting the titles to land.

2. SAME—INDEMNITY BOND—EXPENSES OF SUIT.

The acceptance of a bond given by one not a party to a libel, promising indemnity to the obligee for expenses in coming to the place of trial, in case be will allow himself to be sued other than in the state of his residence, does not render the obligee guilty of maintenance or champerty, even assuming the statutes in relation thereto are still in existence.

3. BOND—VALIDITY—WAGER.

Such a bond will not be declared invalid as lacking consideration, nor in allowing the obligee to wager upon the result of the litigation to the extent of being reimbursed for his expenses in the event of obtaining final judgment.

4. SAME—UNLAWFUL PURPOSE.

Neither will it be declared invalid on account of its being unlawful for one to get up and prosecute unnecessary suits merely to gratify one who is willing to have such suits, but who has nothing to gain thereby, since the obligee is not guilty of doing this, but rather the obligor.

5. SAME—PUBLIC POLICY.

Nor will it be declared invalid as against public policy in having brought a non-resident defendant into the state by engaging to pay his expenses, where it appears that the convenience of the witnesses, as well as the nature of the controversy, is best subserved by having the trial in this state.

6. SAME—CONSTRUCTION—EXPENSES OF ATTORNEYS.

The undertaking in the bond to reimburse the obligee for "personal expenses" in coming on and "defending the suit" must be construed as including the expenses of the attorneys of the obligee in coming on before the trial to take depositions.

Appeal from special term, New York county.

Action by John C. Bundy against Henry J. Newton upon a bond. Judgment for plaintiff. Defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ.

*E. H. Benn,* for appellant. *Dailey & Bell,* (*Frederick E. Crane,* of counsel,) for respondent.

O'BRIEN, J. The case contains no statement that it embraces all the evidence, nor does it comply with another rule, which requires, in the absence of an opinion from the record, a statement that no opinion was delivered by the court below. We are left, however, to consider the questions of law which may be presented by exceptions taken; and with respect to these the only two that require any comment are those relating to the validity of the bond sued upon, and the construction of its terms. In determining the questions thus presented it will render the views we desire to express more definite and certain if we give the bond, which is short, in full. It is as follows:

"Know all men by these presents, that I, Henry J. Newton, of the city of New York, am held and firmly bound unto John C. Bundy, of the city of Chicago, in the sum of five hundred dollars, good and lawful money of the United States, to be paid to the said John C. Bundy, his executors, administrators and assigns, to which payment, well and truly to be made, I do bind myself, my heirs, executors, and administrators, firmly by these presents. Sealed with my seal. Dated the 27th day of August, 1888.

"Whereas, Elizabeth A. Wells, of the city of New York, is about to commence an action in the supreme court of the state of New York, and in the city and county of New York, against John C. Bundy, of Chicago, Illinois, for libel; and whereas, I, the above-named Henry J. Newton, have agreed that in case the said Eliza A. Wells shall fail to recover in said action, and final judgment shall be recovered by said John C. Bundy against her therein, I will pay or cause to be paid to said Bundy his personal expenses of coming

to New York and defending the suit, not exceeding five hundred dollars: Now, therefore, the condition of this obligation is such that, if the above-bounden Henry J. Newton, his heirs, executors, administrators, or any of them, in case of the failure of the said Eliza A. Wells to recover in said action, and the recovery of final judgment by said John C. Bundy against her therein, shall and do well and truly pay or cause to be paid to said John C. Bundy, his executors, administrators, or assigns, his personal expenses incurred in coming to New York, defending the action, and returning therefrom, not exceeding five hundred dollars, on demand, (after the amount shall have been liquidated or determined,) without fraud or delay, then this obligation to be void and of no effect; otherwise to remain and be in full force and virtue. In witness whereof I have hereunto affixed my hand and seal this 27th day of August, 1888.                                   HENRY J. NEWTON. [Seal.]"

In the action brought upon this bond plaintiff recovered the full amount thereof, upon proof that his traveling expenses, the expenses of attending the taking of depositions, and counsel fees, in the action brought by Mrs. Wells against him, exceeded $500, the amount fixed as the penalty of the bond. When the cause was moved for trial the defendant's counsel moved to dismiss the complaint on the ground that it did not state facts sufficient to constitute a cause of action against the defendant, and that the bond set forth in the complaint was illegal, and without consideration. Similar views are urged upon this appeal, and it is here insisted that, if there was any consideration, it was illegal; that the allegations of the complaint bring the case within the statutes against barratry; that the bond is void, not only because contrary to public policy, but also because it is a wager contract. A cursory review of the facts which led to the giving of the bond will dispose of many of these contentions. It appears that the plaintiff, who resided in Chicago, and published a newspaper there, published concerning one Eliza A. Wells, who resided in the city of New York, an article which she and the defendant here alleged to be libelous, but which the plaintiff believed to be true. After having urged Mrs. Wells to sue the plaintiff, and some difficulty arising as to service upon the plaintiff, the defendant opened a correspondence, part of which is set forth in the record, which, in effect, stated that it was the duty of the plaintiff, if he believed the charges and could prove them as stated, to do so in a court of justice; and, as all the testimony was to be had in the city of New York, and it would be for the mutual convenience of the parties to have the trial here, the defendant finally wrote that, if the plaintiff would consent to come to New York, or permit or authorize some attorney to appear for him here, any expenses that might be incurred in defending the action, or in coming to New York for the purpose of preparing for the defense, would be reimbursed by the defendant in the event of the plaintiff succeeding in the action which Mrs. Wells was to bring against him for libel.

Upon these facts, at first blush, a court would be at a loss to determine which of two views should prevail:

*First.* Whether from the nature of the contract it should be held to be illegal and void, and thus relieve the defendant from his voluntary obligation, which the court, under the facts here appearing, would be very loth to do, because, whatever may be said of the attitude of any other party in the case, assuming the old statute still existed relating to maintenance, champerty, and barratry, to which defendant now appeals for his release from the bond, he undoubtedly subjected himself to the penalties imposed by such statutes, and is in an equally unenviable position in the attitude which he now assumes, of having practically stirred up a litigation between others, upon promises under seal, from the consequences of which by repudiation he now seeks to be released. With respect to the defenses based upon the old common-law doctrine relating to maintenance, champerty, and barratry, there are two answers thereto, either of which effectually disposes of appellant's view. The first is

that, even though the statutes were still in force, it would be difficult to see how the plaintiff is to be charged with any of these offenses in accepting indemnity for costs and disbursements in a suit which he was notified was to be brought against him, and which he had no hand in promoting or inciting. Under the old statutes of England the act or deed constituting the offense must have had a tendency to pervert justice, and unlawfully uphold quarrels. 3 Amer. & Eng. Enc. Law, p. 68. On the other hand, if any one, the defendant here was guilty of the very offenses with which he now charges this plaintiff. However, the second and conclusive answer is to be found in the fact that the old common law regarding maintenance and champerty, except so far as embodied in our statutes having reference to certain cases affecting titles to real estate, has been abolished. *Sedgwick* v. *Stanton*, 14 N. Y. 296.

*Secondly.* The court is always loth to enforce a contract of this kind, which would seemingly permit the plaintiff to wager upon the result of a litigation to the extent of being reimbursed in the action which was brought against him by Mrs. Wells, in the event of his obtaining final judgment in his favor in such action. We think, however, a distinction is to be made between a bond such as this, given to a defendant to waive a right to have the place of trial in one rather than another city, and the case of a bond given to a plaintiff to commence an action and prosecute it to final judgment. Our Code, in the case of a nonresident plaintiff suing, does not leave it optional, but will exact as a matter of right in favor of a resident defendant a bond for costs. But, after all, in determining the question here presented as to the legality of this bond, resort should be had to well-settled and elementary principles, from which, as far as may be, the proper deductions may be drawn. A voluntary bond, when entered into by competent parties, founded on a good consideration, and for a lawful purpose, is good and valid at common law. 2 Amer. & Eng. Enc. Law, p. 467*a*. Here the parties were competent to contract; and, so far as the consideration is concerned, the record shows that the bond was under seal, that no evidence to rebut the presumption thus arising in favor of the consideration was offered by the defendant. And even if, from a reading of the bond and the surrounding circumstances, we are at liberty to determine the true consideration, we fail to see why the giving up of the right which this plaintiff had, of insisting upon the trial of the suit of Mrs. Wells in Chicago instead of New York, and the expense which he was thereby put to, was not a good consideration. We might go further, and assert that this imported a valuable consideration into the contract, which, it was stated in the case of *Rector, etc.*, v. *Teed*, 120 N. Y. 583, 24 N. E. Rep. 1014, "may consist of some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other."

This brings us to consider the third element essential to make a good bond in common law, and that is as to whether or not it was entered into for a lawful purpose. The appellant insists that it is contrary to public policy to get up and prosecute in our courts unnecessary suits, merely to gratify a party who is willing to have a suit, notwithstanding he has nothing to gain by it. This, it is claimed, was the situation of the plaintiff here, who, it is insisted, had nothing to gain or recover of Mrs. Wells, even if he defeated her action. We think that the appellant's counsel continually loses sight of the position in which his own client has placed himself, and would attribute to the plaintiff all the bad and evil features which his own client alone possesses. It was the latter, and not the plaintiff, that got up and introduced the prosecution in our courts of the suit of Mrs. Wells against this plaintiff; and the part that the plaintiff here played in that suit was the result of an appeal made by this very defendant to his sense of honor, and of what was due the public, and to his sense of duty. These, no doubt, were the controlling causes leading the plaintiff here to waive a right which he had, to have the suit brought in Chi-

cago, to the end that he might expose the fraud and swindling practices with which he charged Mrs. Wells in the article complained of, and which in a suit he insisted he would be able to prove were true.

Appellant's final claim against the legality of the contract is the assertion that it was against public policy, and therefore void. In *Sedgwick* v. *Stanton*, 14 N. Y. 291, it is said: "Contracts illegal at common law, as being contrary to public policy, are such as injuriously affect or subvert the public interest, (1 Story, Eq. Jur. § 259, note;) such contracts as by their terms or contemplated manner of performance must work some mischief affecting the body politic." Comyn, in his work on Contracts, (page 58,) says: " All contracts or agreements which have for their object anything which is either repugnant to justice, or in violation of religion or public decency, are void. So are all contracts made in contravention of the general policy of the common law, or in direct opposition to the provisions of an act of parliament, for *ex turpi contractu actio non oritur* is a rule both of law and equity. * * * The cases where the doctrine of public policy has been applied most commonly are in respect to contracts made in restraint of trade, of marriage, those which affect injuriously the legislation or administration of justice of the state, wager contracts, and contracts affecting the public morals. The adjudications in this class of cases proceed on the ground of some public injury which the performance of the stipulations of the parties would be likely to produce." What was further on said in that case also applies here: "In the case at bar, no public interest was violated in the execution of the contract." It cannot be said to have injuriously affected or subverted a public interest to have brought within the jurisdiction of our courts one residing without the state by contracting to pay his expenses in coming here for the purpose of standing a trial for an attack upon the character of a citizen of this state, where, as in this case, it is shown the convenience of witnesses and the subject of the controversy demanded a trial in this state. On the contrary, it would seem to be assisting in the administration of justice to arrange for a trial here by agreeing to pay the expenses of the defendant should he come and be sued here, instead of compelling the plaintiff and her witnesses to go to Illinois. It was to induce the plaintiff here to give up his right that the defendant here, on behalf of Mrs. Wells, the plaintiff in the libel suit, gave the bond which is the subject of this action. Nor can we think of any ground of public policy which would hold such a contract or agreement to be illegal or void.

Apart, however, from the validity of the bond, appellant insists that there were erroneous rulings of the court on the trial sufficient to entitle him to have the judgment reversed. These, as we have already said, related to evidence which the plaintiff was allowed to offer, showing the amounts paid to his attorneys in the libel suit brought by Mrs. Wells for expenses in coming from Chicago on taking the depositions of witnesses before trial, and of sums paid for subpœnaing witnesses. The objections to the admissibility of such evidence were all based upon the appellant's construction of the terms of the bond, which he insisted was an obligation to pay nothing more than the personal expenses of the plaintiff here, who was the defendant in the action brought by Mrs. Wells. This construction, we think, is strained. It must be remembered that the bond was drawn by this defendant; and, if any doubt exists as to what his intention was, it should not be resolved to the injury of the plaintiff, particularly in view of the light thrown upon the bond itself by the letters written to the plaintiff here by the defendant, which show exactly what he intended should be covered by the terms of the bond. Its terms were not, nor were they intended to be, limited to paying the expenses of the plaintiff in coming to New York to defend the suit, but the view taken by the learned trial judge we think was the proper one, that they included—*First*, his personal expenses incurred in coming to New York; *second*, the personal

expenses incurred in defending the action; and, *third*, his personal expenses incurred in returning to Chicago. We do not see how any other construction than this can be given to the language employed. Under this construction, the evidence offered as to the disbursements made was properly received. Upon the record, therefore, as presented, we are of opinion that the judgment should be affirmed, with costs.

PATTERSON, J., concurs.

VAN BRUNT, P. J. I concur in the result of the foregoing opinion. Although it is extremely doubtful if expenses in coming on to take depositions are within the terms of the bond, there being more than sufficient of other items to extend the bond, the judgment should not be disturbed.