WILLIAM H. FLANNERY and THOMAS FLANNERY, Respondents, v.  | 89   135 |
| 155a  692 |
THE CORNELL STEAMBOAT COMPANY, Appellant.

*Navigation — rule when steamers are approaching head and head — signal to be
given — absence of lookout, when not negligence.*

The rule of navigation, when steamers are approaching each other head and head,
or nearly so, requires each steamer to pass to the right, and the pilot of either
steamer may be first in determining to pursue this course, and thereupon shall
give, as a signal of his intention, one short and distinct blast of his steam
whistle, which the pilot of the other steamer shall answer promptly by a
similar blast of his steam whistle, and thereupon such steamers shall pass to
the right.

It is the office of a lookout upon a vessel to discover dangers which cannot be so
quickly discovered by a pilot who is engaged in navigating the vessel, but, if
the peril is seen by the navigator, or any other person, in time to take measures
for its avoidance, no charge of negligence can be based upon the absence of a
lookout.

APPEAL by the defendant, The Cornell Steamboat Company, from
a judgment of the Supreme Court in favor of the plaintiffs, entered
in the office of the clerk of the county of Kings on the 8th day of
February, 1895, upon the verdict of a jury rendered after a trial at
the Kings County Circuit, and also from an order made at the
Kings County Circuit, bearing date the 6th day of February, 1895,.
and entered in the office of the clerk of the county of Kings, deny-
ing the defendant's motion for a new trial made upon the minutes.

*Benedict & Benedict,* for the appellant.

*Stewart & Macklin,* for the respondents.

DYKMAN, J.:

This action was brought by the plaintiffs, as owners of the steam
tug *William H. Bentley,* against The Cornell Steamboat Company,
owners of the steam tug *Coe E. Young,* to recover the damages
sustained by the *Bentley* while in collision with the *Young* on the
5th day of September, 1893.  On the day of the accident the
*Bentley* started from the Wallabout in Brooklyn, about half-past
seven o'clock in the morning, bound down and across the East river,
to Pier No. 6 on the New York side.  She proceeded at half speed.

There was a large steamer coming up the East river, heading
toward the New York side, and when the steamer crossed the bows

of the *Bentley* it was between the *Bentley* and the *Young*, which was coming up the river against the tide, with a canal boat loaded with coal on her port side. When the captain of the *Bentley* first sighted the *Young* the two tugs were about head and head, and he put his wheel a-port, and blew one whistle to indicate that he was going to the right of the *Young*, and that the pilot of the *Young* should port his wheel and go to the right of the *Bentley*, so that each vessel should pass the other port to port At that time the two tugs were about 250 or 300 feet apart. No answer was made from the *Young* to the signal whistle of the *Bentley*, and in a few seconds the captain of the *Bentley* gave a second signal of one whistle also. During all this time the *Bentley* had been going to the right in accordance with her signal, but when no answer was received to the second signal of one whistle, her captain blew two or three danger signals as a warning to the *Young* to keep clear. Instead of stopping or putting his wheel to port and turning his vessel toward the Brooklyn side so as to escape the collision, the captain of the *Young* put his wheel a-starboard, and thereby turned his vessel to the left, and the canal boat collided with and struck her about midships on her port side.

The rule of navigation for steam vessels applicable to this case is as follows : When steamers are approaching each other head and head, or nearly so, it shall be the duty of each steamer to pass to the right, that is, on the port side of the other, and the pilot of either steamer may be first in determining to pursue this course, and thereupon shall give as a signal of his intention one short and distinct blast of his steam whistle, which the pilot of the other steamer shall answer promptly by a similar blast of his steam whistle ; and thereupon such steamers shall pass to the right, that is, the port side of each other. But if the course of such steamers is so far on the starboard of each other as not to be considered by pilots as meeting head and head, or nearly so, the pilot so first deciding shall immediately give two short and distinct blasts of his steam whistle, which the pilot of the other steamer shall answer promptly by two similar blasts of his steam whistle, and they shall pass to the left or on the starboard side of each other.

Under the circumstances disclosed by the evidence and found by the jury, as we must assume, the conduct of the captain of the *Bent-*

*ley* was in accordance with that rule.   It was the duty of each vessel to pass to the right, and either one might be first in determining to pursue that course ; and when he had so determined it was his duty to signal his intention by giving one short and distinct blast of his whistle.

That was all done by the captain of the *Bentley*, and the pilot of the *Young* gave no signal, and there is no excuse for such inaction. If for any reason he could not go to the right, or if, in his opinion, the course of the steamer was such as not to be considered by pilots as meeting head and head, or nearly so, then he knew that he was the first pilot to so decide, and it was his duty immediately to give two short and distinct blasts of his steam whistle as a notice of his intention to pass to the left.   If he could have done neither he could have reversed his engine and his headway soon would have been arrested by the current, which was against him.   Without any effort in either of the directions indicated, his action had been to turn his vessel toward the *Bentley* and expedite the collision.   At the close of the testimony on the part of the plaintiffs the counsel for the defendant moved to dismiss the complaint on the ground of the absence of the lookout on the *Bentley*, and the denial of that motion is assigned for error.   A lookout is a competent person stationed for that purpose on the forward part of the vessel.   His presence there is a wise precaution, and in many cases his absence would manifest a want of proper care.   But where the absence of a lookout contributes nothing to the accident, no liability will be incurred therefor.   It is the office of a lookout to discover dangers which cannot be so quickly discovered by a pilot who is engaged in navigating the vessel ; but if the peril is seen in time by the navigator, or any other person, in time to take measures for its avoidance, no charge of negligence can be based upon the absence of a lookout. As a lookout is by no means the only precaution adopted by a prudent navigator to guard against danger, so his presence is not indispensable as a shield against the imputation of negligence.   (Case of *The Farragut*, 10 Wall. 334.)

The foregoing principles applied to this case exculpate the navigators of the *Bentley* from the charge of negligence.

The *Young* was discovered by the captain of the *Bentley* as soon as she was uncovered by the big steamer and came in sight behind

her stern.   A lookout could not have seen her sooner, and there was ample time for the avoidance of the collision if the pilot of the *Young* had observed the *Bentley* and obeyed the rules of navigation as the captain of the *Bentley* did.   It may as well be stated here that under the charge of the trial judge we must assume that the jury believed the testimony on the part of the plaintiffs and disbelieved the testimony on the part of the defendant.   We, therefore, take the facts as the jury have found them.   The absence of a lookout, therefore, went to the jury like all the other facts and circumstances in the case upon the question of negligence, and the motion for a dismissal was properly denied.   The same question was raised by a request to charge, which was also properly denied.   The counsel for defendant requested the trial judge to charge that the man who blows the whistle has no right to go a-port, but must wait until the signals are understood, but the request was properly denied.

We have already stated the proper construction of the rule of navigation to be that the pilot of either steamer may be first in determining to pass to the right when steamers are approaching each other head and head.   The record discloses no errors, and the judgment and order denying a motion for a new trial must be affirmed, with costs.

PRATT, J., concurred; BROWN, P. J., not sitting.

Judgment and order affirmed, with costs.