[No. 11495.   Department One.   March 27, 1914.]

G. O. VERNON, *Respondent*, v. INTERNATIONAL STEAMSHIP COMPANY, *Appellant*.[1]

COLLISION—STEAMERS MEETING—FOG—NAVIGATION RULES—DUTY—NEGLIGENCE.  Under article 19 of the navigation rules (30 Stats. at L. 101), providing that when two steamers are crossing so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other, the position of the vessels does not necessarily determine the question of negligence, in view of article 29 (30 Id. 102), providing that nothing in the rules shall exonerate a vessel from the neglect of any precaution required by the ordinary practice of seamen or by special circumstances; since the circumstances may require both to come to a stop until positions are determined.

SAME—NEGLIGENCE—QUESTION FOR JURY.  Upon a collision by two steamers in a dense fog, the negligence of a master in not bringing his ship to a stop as was done by the other master, until positions could be determined, is for the jury, where his ship was making a turn which rendered it difficult for the other master to determine her position and intended course, and the signals indicated that the vessels were getting closer, and they could not be seen further than thirty or forty feet.

SAME—CONTRIBUTORY NEGLIGENCE—FAILURE TO PROVIDE LOOKOUT—QUESTION FOR JURY.  The failure of the master of a steamer to have a lookout upon the bow, as required by navigation rules, art. 29 (30 Stat. at L. 102), while he was entering a harbor in a dense fog, will not preclude a recovery for a collision through the negligence of another vessel, where there was evidence that the accident would not have been avoided thereby, because the master saw the other vessel as soon as a lookout could, if one had been provided; since the question was for the jury.

Appeal from a judgment of the superior court for King county, Tallman, J., entered April 11, 1913, upon the verdict of a jury, rendered in favor of the plaintiff, in an action in tort.   Affirmed.

*Ira Bronson* and *J. S. Robinson*, for appellant.

*John E. Ryan* and *Grover E. Desmond*, for respondent.

[1]Reported in 139 Pac. 645.

MAIN, J.—This action was instituted for the purpose of recovering the value of certain live stock and other personal property which was lost with the steamer Multnomah, on the night of October 27, 1911, when she sunk in Elliott bay, at Seattle, after a collision with the steamer Iroquois. The defendant corporation was the owner of the Iroquois at the time.

Shortly after 11 o'clock, on the night in question, the Multnomah passed the bell buoy stationed out from Duwamish head, or West Seattle, and entered Elliott bay. Soon she ran into a thick fog bank. After this, the speed of the vessel was slackened and the whistle blown approximately every ten seconds. She continued on a straight course for her berth at the Galbraith dock. While the Multnomah was thus entering port, the Princess Victoria pulled out from the north side of pier 1, which was to the south of the Galbraith dock, and pursuing her course in a northwesterly direction, crossed in front of the Multnomah. Immediately after the departure of the Princess Victoria, the Iroquois backed out from the south side of pier 1, with her stern to the north, circling to the starboard or right, and taking her course to the northwest. During the time she was making the turn, her whistle was being blown at frequent intervals.

The master of each vessel could determine the position and course of the other only from the sound of the whistles. The master of the Multnomah, when asked what course the Iroquois appeared to be taking, stated, that she appeared to be moving toward the south or east waterway when he first heard her whistle; then she appeared to be off the Colman dock, the sound of the whistle was drawing away from him; then she appeared to be stationary; and, after a very short time, seemed to be getting closer again; then every time the whistle was heard "it appeared to be closer and closer until I seen her and she hit." He also testified that, when the Iroquois appeared to be getting closer, he

caused the Multnomah to come to a stop.  The evidence also shows that, after the Iroquois had made the turn and had taken her course to the northwest, she was given a "kick ahead," to increase her speed and thereby get steerageway; that is, to enable her to acquire such speed that the rudder would be able to influence her course.  The density of the fog was such that the vessels could not be seen for a greater distance than thirty or forty feet.  After the vessels sighted each other, the engines of each were caused to be reversed, and at the instant of the collision, both were working full speed astern.  Apparently the momentum which the Iroquois had acquired carried her forward, and the collision occurred. The master of the Iroquois, when asked why he attempted to cross the bow of the Multnomah instead of passing her astern, stated that the reason was that he wanted to "put her in the position of looking out for me."  He had heard the signals of the Multnomah and knew her course was in a straight line.  The facts stated are largely supported by the plaintiff's evidence.  With this, the defendant's evidence does not entirely harmonize.

The cause was tried before the court and a jury, and a verdict returned in favor of the plaintiff in the sum of $850. A motion was interposed by the defendant for judgment notwithstanding the verdict and, in the alternative, for a new trial.  Both motions were based upon the claim that the evidence was insufficient to justify the verdict.  These motions were overruled.  Judgment was entered upon the verdict.  The defendant appeals.

It is contended that the evidence was not sufficient to justify the trial court in submitting the cause to the jury for two reasons:  First, that the facts proven did not show negligence; and second, the failure of the Multnomah to have a lookout upon her bow at the time of the collision prevents a recovery.

I.  It is argued that the facts proven did not support the claim of negligence.  By article 19 of the navigation

rules, promulgated under the authority of the Congress of the United States, it is prescribed that, "when two steam-vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other." 30 Stat. at Large, p. 101. In the present case, much controversy revolves around the question as to which of the vessels had the other on the starboard side. The respondent claims that, at the time of the collision, the Multnomah was on the starboard of the Iroquois; and the appellant makes directly the opposite contention. It is not necessary, however, to determine this point. It will be assumed that, at the time of the collision, the Iroquois was on the starboard side of the Multnomah. From this, it does not necessarily follow that the Iroquois was free from negligence. The question is whether attendant circumstances were not such as to require both vessels to come to a standstill until the position and course of each could be definitely ascertained. Article 29 of the navigation rules provide that nothing in the rules shall exonerate a vessel or the master thereof from the neglect of any precaution "which may be required by the ordinary practice of seamen, or by the special circumstances of the case." 30 Stats. at Large 102.

In this case, both vessels were in a dense fog. The circuitous course of the Iroquois in making the turn rendered it difficult for the master of the Multnomah to determine her exact position and her intended course. There was evidence that the master of the Multnomah, when the signals indicated that the Iroquois was getting closer, caused the Multnomah to come to a complete stop. Whether it was also the duty of the Iroquois to stop until the position of each vessel could be ascertained, under all the attendant circumstances, was a question of fact for the jury to determine. This position is recognized in the case of *The Umbria*, 166 U. S. 404, where the court in speaking of the duties attendant upon a vessel in a dense fog said:

"In a dense fog this might require both vessels to come to a standstill, until the course of each was definitely ascertained. In a lighter fog it might authorize them to keep their engines in sufficient motion to preserve their steerageway."

II. It is next claimed that the Multnomah was guilty of negligence which would prevent her recovery because of the failure to have a lookout upon her bow. Article 29 of the rules above referred to is as follows:

"Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, . . ." 30 Stats. at Large 102.

The law appears to be that the failure to keep a lookout as required by the rule is evidence of negligence, and will prevent a recovery, unless it appears by clear and convincing evidence that the collision would have occurred even though the rule had been complied with. A fault which produces no ill consequences will be regarded as immaterial. *Meyers Excursion & Navigation Co. v. The Emma Kate Ross*, 41 Fed. 826; *The Fannie*, 78 U. S. 238; *The Blue Jacket*, 144 U. S. 371; *The Farragut*, 77 U. S. 334. In the case last cited, it is said:

"It is, undoubtedly, true that the absence of a special look-out would, in many cases, perhaps in most cases, be regarded as evidence of great negligence. The last rule prescribed by Congress by the Act of April 29, 1864 (13 Stat. at L. 61), declares that 'nothing in these rules shall exonerate any ship, or the owner, or master, or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a *proper look-out*,' etc.; thus intimating that 'a proper look-out' is one of the ordinary precautions which a careful navigation involves. But it would be against all reason to contend that the master or owners of a vessel should be made liable for the consequences of an accident by reason of not having a special look-out where the collision or loss could not have been guarded

against by a look-out, or where it is clear that the absence of a look-out had nothing to do in causing it."

In the present case, there was evidence that, if the lookout had been in the proper place on the Multnomah, the accident would not have been avoided, because a lookout could not have seen the approaching vessel before the master did. Under the evidence, whether the master of the Multnomah, who first sighted the Iroquois through the fog, saw her as soon as would a lookout, had one been provided as required by the rule, was for the jury. This question was submitted by the trial court under a proper instruction.

The judgment is affirmed.

CROW, C. J., ELLIS, CHADWICK, and GOSE, JJ., concur.