**WE-FOUR CORPORATION v. THE WHALER et al.**

No. 4388.

United States Court of Appeals First Circuit.

May 11, 1949.

As Amended on Denial of Rehearing June 3, 1949.

Charles S. Bolster, of Boston, Mass. (Bingham, Dana & Gould, of Boston, Mass., on the brief) for appellant.

Thomas H. Walsh, of Boston, Mass. (Leo F. Glynn, of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS (by special assignment), and WOODBURY, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the libelant, the owner of the fishing vessel Mary Grace, from the decree of the United States District Court for the District of Massachusetts dismissing the libel in admiralty filed by it against the fishing vessel Whaler for the loss of the Mary Grace and the personal effects of her crew as the result of a collision with the Whaler. The trial judge upon evidence which we regard as amply sufficient made the following findings of fact:

"The fishing vessel Whaler left the port of New Bedford on September 19, 1946, bound on a fishing trip. On September 22, 1946, with her hold partially filled with fish, she was dragging in a calm sea with a slight swell and a thick fog. She had been blowing the regular signals used by her and other vessels on the banks of one long and two short blasts at short intervals. While actually dragging, the Whaler had been proceeding at about three knots per hour prior to the collision a whistle had been sounded to give the signal to knock out the hook-up block on the after quarter of the vessel. From then on she lost headway and was practically at a standstill when the collision with the Mary Grace occurred a few minutes later. The Whaler did not have a lookout stationed at the forward part of the bow, but two of the seamen were hauling in the net from the winch. I find that the Whaler was not at fault in failing to maintain a lookout at the most forward part of the boat since they were

not under way. It had no more reason to anticipate the approach of a boat towards the bow than to anticipate the approach of a boat from the stern, or either side. The crew were fishing in the customary manner, blowing their whistle to warn approaching vessels of their presence. They did all that was required under the circumstances to protect themselves and others from harm, and I find no fault in their failure to maintain a lookout on the forward bow.

"While it is not necessary for the decision in this case to make a finding on the question of the fault or negligence of the Mary Grace, it is worthy of comment to note that she was proceeding through a thick fog at a rate of speed which, under the circumstances, was excessive. She was proceeding at a speed between five and seven knots per hour. The speed alone might not be sufficient to charge her with fault but, in addition to the speed, I find that she did not sound her whistle or fog-horn for a considerable period of time prior to the collision. This time was estimated as of varying lengths, from two to twenty-five minutes.

"As a result of the collision, a hole was opened up in the Mary Grace and she sank shortly thereafter."

Upon the foregoing findings the district court concluded that the collision between the two vessels was not caused by the fault or negligence of the Whaler and entered the decree dismissing the libel from which the present appeal was taken. Upon this appeal the libelant concedes that the Mary Grace was at fault but contends that the district court erred in failing to find that the Whaler was also at fault in that she had no lookout whatever and was not sounding proper fog signals. After full consideration we find these contentions to be without merit and reach the conclusion that the district court rightly dismissed the libel.

The libelant's contention that the Whaler was at fault because she had no lookout whatever at the time of the collision is not supported by the evidence. It is true that the Whaler did not have a lookout stationed at the forward part of the bow. Not being under way, she was not required to do so. Nonetheless, John Borten, one of the members of her crew, was actually standing on the forward part of the deck of the Whaler looking out over the ocean and saw the Mary Grace as she emerged from the fog and he immediately gave the alarm. Under these circumstances it is obvious that the failure of the master of the Whaler to station a formal lookout in the bow, even if there had been a duty on his part to do so, could not have been a contributing cause of the collision.

The same conclusion must be reached with respect to the libelant's contention that the Whaler was at fault because she was not sounding proper fog signals. This contention is based upon the proposition that the signals which the master of the Whaler was sounding, namely, one long and two short blasts on the whistle at short intervals, were not in conformity with Article 9(i) of the International Rules for Navigation at Sea, 33 U.S.C.A. § 79(i) which provide that: "In fog, * * * vessels when trawling, dredging, or fishing with any kind of drag net, * * * shall, if of twenty tons gross tonnage or upward, respectively, at intervals of not more than one minute make a blast; if steam vessels, with the whistle or siren, * * * each blast to be followed by ringing the bell."

It appears from the evidence, however, that on the Nantucket Shoals where these vessels were fishing the custom was to sound the signal which was being employed by the master of the Whaler rather than the one specified by the International Rules. Thus the master of the Mary Grace himself testified: "They blow on all the fishing boats one long and two shorts towing, and that is what I heard most of the time towing." The fact that the master of the Whaler sounded signals of a character which the master of the Mary Grace himself recognized as the customary signals to be expected from a fishing vessel in the position of the Whaler could not have been a contributing cause of the collision. Moreover, it further appears from the evidence that the master of the Whaler blew the two blasts signal required by Article 15(b) of the International Rules, 33 U.S.C.A. § 91

(b), within two minutes before the collision.

The decree of the district court will be affirmed, with costs.