**Leo DION and Grace Dion**

v.

**UNITED STATES of America.**
**Admiralty No. 188.**

United States District Court
D. Maine, S. D.

Dec. 7, 1961.

As Amended Dec. 13, 1961.

Nathan W. Thompson, Portland, Me., William T. Conlan, Boston, Mass., for petitioners.

Alton A. Lessard, U. S. Atty., Portland, Me., Allen Van Emmerik, Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., for respondents.

GIGNOUX, District Judge.

This libel under the Public Vessels Act, 46 U.S.C.A. § 781 et seq. arises out of a collision in Penobscot Bay between the yacht Bob-Tom II, a double-ended motor sailer owned by libellants, and the CG 64300, a United States Coast Guard tug.

The collision occurred in dense fog at about 11:40 A.M. on July 31, 1959 at a point within 30 yards of Bell Buoy No. 3 off Monroe Island. The Bob-Tom II, with Leo Dion at the helm and Captain Kenneth Mayo as navigator, had departed earlier that morning in a moderate fog from Camden en route to Boothbay Harbor, and had been running for Buoy No. 3, on a southerly course. The CG 64300, with a crew of three men aboard, had just come out of Rockland Harbor on a logistics run to Matinicus Island, and was also running for Buoy No. 3, on a southeasterly course. The sea was calm, and there was little or no wind, but the fog limited visibility in the vicinity of Buoy No. 3 to no more than 25 yards. The two vessels sighted each other simultaneously when they were 25 yards or less apart. Each put her helm over, and the tug reversed her engine, but there was no time for these maneuvers to avert a collision. The bow of the tug struck the starboard side of the yacht approximately 6 ft. aft of her stem. It is stipulated that the amount of damage to the Bob-Tom II was $12,500. There was no damage to the tug, and there were no personal injuries on either boat.

Respondent concedes that the tug was at fault and that her fault caused or contributed to the collision, since she had secured her fog horn for 4 minutes prior to the collision and she was proceeding through a thick fog at a speed of at least 4 knots, a rate of speed, which under the circumstances, was clearly excessive. 33 U.S.C.A. §§ 191, 192. Although not conceded by respondent, the tug was apparently also proceeding without a proper lookout. 33 U.S.C.A. § 221. Respondent contends, however, that the Bob-Tom II was also at fault, and therefore must contribute equally to the damages (The

Schooner Catharine v. Dickinson, 17 How. 170, 177–178, 58 U.S. 170, 177–178, 15 L.Ed. 233 (1855)), because she also was not sounding proper fog signals, was proceeding at an excessive rate of speed, and had no sufficient lookout. 33 U.S. C.A. §§ 191, 192, 221. Whether the Bob-Tom II was also at fault presents the only substantial issue in this case, and requires consideration of the conflicting testimony as to what the yacht and those aboard her were doing immediately before the collision.

■ The witnesses from the tug testified that the Bob-Tom II was proceeding at 3 or 4 knots when she first appeared out of the fog and that they had heard no fog signals from her. Mr. Dion and Captain Mayo testified that as the Bob-Tom II approached Buoy No. 3 they had idled her engine in order to listen for the bell, and that at the time of the collision she was substantially dead in the water. They also testified that the Bob-Tom II had been sounding proper fog signals continuously up until the accident. The two versions cannot be reconciled. The Court accepts the testimony of Mr. Dion and Captain Mayo, and concludes that the Bob-Tom II was not at fault because of any excessive speed or failure to sound proper fog signals.

There remains for consideration only respondent's claim that the Bob-Tom II failed to maintain a proper lookout. Admittedly neither Mr. Dion nor Captain Mayo was engaged solely as a lookout at the time of the collision. They testified that on the run from Camden Captain Mayo had been stationed on the bow as a lookout, but that when he finally located the buoy off the bow, he had returned to the cabin to chart the next leg of their course. Immediately before the collision, Captain Mayo was bent over the chart table, and Mr. Dion was standing at the wheel, sounding the fog signal and observing the area which was visible within the fog. Mr. Dion first saw the tug as it broke through the fog 25 yards abaft the starboard beam, and the tug

struck the Bob-Tom II within 2 or 3 seconds after it appeared out of the fog.

■■ Under these circumstances it is obvious that the failure of the Bob-Tom II to have a formal lookout in the bow, even if there had been a duty to do so on a ship of this size in this situation, compare Dahlmer v. Bay State Dredging and Contracting Co., 26 F.2d 603, 605 (1st Cir.1928) with We-Four Corp. v. The Whaler, 174 F.2d 402 (1st Cir.1949) and Noble v. Moore-McCormack Lines, Inc., 96 F.Supp. 369 (D.C.Mass.1951), was not and could not have been a contributing cause of the collision. Since the Bob-Tom II was practically at a standstill, she had no more reason to anticipate the approach of another boat from ahead than from astern, or from either side. In fact, the tug appeared from aft of the beam, and Mr. Dion saw her as soon as she became visible. He saw everything that there was to be seen within the limits of visibility, and the presence of an additional lookout could have added nothing to prevent the collision. It is well settled that the absence of a lookout will not produce liability where it is clear that it had nothing at all to do with the happening of the accident. The Farragut, 10 Wall. 334, 77 U.S. 334, 19 L.Ed. 946 (1870); We-Four Corp. v. The Whaler, supra. This is simply an application of the rule that statutory fault is immaterial if it could not have contributed to cause the accident. See The Pennsylvania, 19 Wall. 125, 136, 86 U.S. 125, 136, 22 L.Ed. 148 (1873).

■ The Court concludes that the collision between the two vessels was caused by the fault of the CG 64300, and was not caused through any fault of the Bob-Tom II.

Accordingly, a formal decree will be prepared and entered in favor of libellants for their damages which have been stipulated to be $12,500, with costs as provided by law, and with interest at the rate of 4% per annum to commence July 20, 1960, the date of filing of the libel, and to run until the judgment is satisfied.