BALTIMORE STEAM PACKET CO. v. COASTWISE TRANSP. CO.

COASTWISE TRANSP. CO. v. BALTIMORE STEAM PACKET CO.

(District Court, E. D. Virginia.   July 17, 1905.)

1. COLLISION—VIOLATION OF RULES—EVIDENCE TO EXONERATE FROM LIABILITY.
    Where one vessel has been found guilty of a palpable violation of the rules of navigation sufficient in itself to account for a collision, she cannot escape liability merely by casting doubt upon the conduct of the other vessel.

    [Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 16, 17.]

2. SAME—STEAMER AND ANCHORED SCHOONER IN FOG—FAILURE TO SOUND FOG SIGNALS.
    Conflicting evidence considered, and *held* to establish by a preponderance that there was a thick fog at the time of a collision in the early morning between a steamer and a schooner lying at anchor in Hampton Roads, which made it the duty of the schooner, under article 15d of the navigation rules (30 Stat. p. 99, c. 4 [U. S. Comp. St. 1901, p. 2880]), to sound fog signals, and to render her solely in fault for the collision because of her violation of such rule.

In Admiralty.   Cross-suits for collision.

Hughes & Little, for Baltimore Steam Packet Co.

Carver & Blodgett and Whitehurst & Hughes, for Coastwise Transportation Co.

WADDILL, District Judge.   These are cross-libels filed by the Baltimore Steam Packet Company, owner of the steamer Georgia, against the Coastwise Transportation Company, owner of the schooner Henry W. Cramp, and by the latter company against the former.

About 6:15 o'clock in the morning of the 31st of January, 1904, the steamer Georgia, on her regular trip from Baltimore to Norfolk, a few minutes after leaving Old Point Wharf, and at a point from about a mile and a half to two miles from said wharf, in Hampton Roads, came into collision with the schooner Henry W. Cramp, then lying at anchor in the Roads.   As is usual in this class of cases, each vessel in collision insists that the occurrence was solely the fault of the other; the charges on the part of the Georgia briefly being that there existed at the time a dense fog, and that the schooner Cramp was anchored directly in the path of incoming and outgoing steamers, and was without proper anchor watch, and was not ringing her bell or giving any other notice of her location, and that she was taking no precaution to avoid collision with passing vessels; and on the part of the Henry W. Cramp that the weather was clear, sea smooth, and lights could be seen a distance of two miles, and that the Georgia was without a proper lookout or a competent master and crew, and was proceeding at too great a speed, and failed to keep clear of the customary anchorage grounds, and of the Henry W. Cramp while lying there at anchor.   It is not deemed necessary to enter into a lengthy discussion of the several faults assigned by the vessels against each other, further than to say that the case turns entirely upon the condition

of the weather at the time of the collision, and whether or not there existed a fog, or other weather conditions such as imposed upon the anchored vessel the obligation to give proper fog signals; the Georgia's contention being that the fog at the time was so dense that it was impossible to see more than about a ship's length away, and that fog signals should have been given, whereas the Cramp's contention is that the weather was clear, or comparatively so, and that fog signals were unnecessary, and none given. Upon this question a great mass of evidence was taken, particularly in behalf of the Georgia, mostly before the court; and without attempting to review the same at great length, or to reconcile all of the apparent conflicts therein, further than to say that the same has been fully considered, the conclusion reached by the court is that there did exist at the time of the collision such weather conditions as made it obligatory upon the Henry W. Cramp, lying at anchor, to give the required fog signal (30 Stat. p. 99, c. 4, art. 15d [U. S. Comp. St. 1901, p. 2880]: "A vessel when at anchor shall, at intervals of not more than one minute, ring the bell rapidly for about five seconds"), and her failure so to do was the cause of the collision in this case. The evidence in behalf of the Georgia clearly establishes the existence of a thick fog, certainly from 4 o'clock on the morning of the collision until some time after the collision; and this is shown not only by the officers and crew of the ship itself, but by others in a position to know and judge of the weather, particularly in the immediate vicinity of the collision, and at Old Point Comfort; a large number of persons being examined at length on this point, among them the lighthouse keeper at Old Point, the officers of the pilot boat Relief, lying at Old Point, employés upon the wharf at Old Point, the picket on duty at the time from the army post, the anchor watch on the hospital ship Jamestown, lying between the wharf and the scene of collision, the members of the crews of other steamers passing out of the Roads at the time, and a passenger on the Georgia at the time of the collision. These witnesses, some 19 in number, with singular unanimity concur in the fact that from and after about 4 or 4:30 o'clock that morning, there existed a dense fog; that the Georgia could not be seen in making the landing at Old Point but 200 or 300 feet away; that she approached the wharf, and left, sounding her fog signals; and that other steamers going out, and the hospital ship Jamestown, and an oil steamer lying at anchor near Old Point at the time were also ringing bells; and that it was utterly impossible to see any distance, comparatively, in the fog. The lighthouse keeper at Old Point, who produced his official records made at the time, testified that the weather was thick all night; that it was his custom, when Thimble Light and the Newport News and Willoughby Spit lights "shut in," to start his fog bell; that on the morning in question at 4:30 o'clock, on account of this condition, he put on his bells, and rang them until 8 o'clock; that he remembered the morning particularly partly because of two Baltimore steamers passing at the same time, going in opposite directions, and that he heard the steamer going out sound fog whistles regu-

larly, and the one going in several times after she left the wharf; that he was outside continuously that morning, and that there was no lightening of the fog during the hours mentioned.   This statement is supported by the witnesses above referred to, all of whom were out in, and in a position to see and judge of the condition of, the weather, including the passenger referred to, a man of evident intelligence and reliability, who also saw and observed the weather, and fully concurs with the ship's officers that at the very moment of the collision it was impossible to see more than a ship's length ahead.   In behalf of the schooner Cramp quite a number of witnesses were examined, consisting of her officers and crew and some of the officers and crews of other vessels, also lying at anchor in the vicinity of the collision; and it by no means follows from their evidence that the weather conditions were not such as to require fog signals.  The rules of navigation require the giving of signals not only in a fog, but in "mist, falling snow, or heavy rainstorms, whether by day or night."   Several of the witnesses examined on behalf of the Cramp, including her master, speak of the existence of a drizzle or mist; the master of the Cramp referring to it as "what you call a 'Scotch mist.'"   Suffice to say, however, that, in so far as their testimony tends to show that the weather conditions at the time of the collision did not require the fog signal, the overwhelming preponderance of the evidence is to the contrary; and the conflict may be accounted for from the fact that the Cramp's witnesses may have observed the weather hurriedly, and at times that did not necessarily bear on the weather at the time of the collision; and as to the Cramp's witnesses from the other vessels it may be said that, if there did exist such weather conditions as the evidence conclusively shows, they were themselves guilty of negligence, as their respective vessels were confessedly not giving fog signals.

The schooner Cramp insists that the collision did not come about because of her failure to give proper fog signals, but because the Georgia was proceeding at too high a rate of speed in the fog, in violation of the statutory provisions of the act of June 9, 1897, art. 15, 30 Stat. p. 99, c. 4 [U. S. Comp. St. 1901, p. 2880].   This defense will not avail to relieve the Cramp, unless the same is clearly and conclusively established, since the Cramp has been found guilty of a palpable violation of the statutory requirement relative to navigation, sufficient within itself to account for the disaster, and which, in the judgment of the court, caused the same; and it will not do, therefore, for her merely to throw doubt upon the conduct of the Georgia in order to escape liability herself.   The Pennsylvania, 19 Wall. 125, 136, 22 L. Ed. 148; The Martello, 153 U. S. 64, 74, 14 Sup. Ct. 723, 38 L. Ed. 637; The Georgetown (D. C.) 135 Fed. 854, 857.

Neither do the facts in this case support the Cramp's contention that the speed of the Georgia entered into the cause of the disaster. While it is quite clear from the evidence that the Georgia had been violating the rules of navigation in respect to her speed, still this

condition did not prevail at the time of the collision. It may be said to be providentially so, as far as the Georgia is concerned, but nevertheless it serves to relieve her from fault. The Ludvig Holberg, 157 U. S. 60, 15 Sup. Ct. 477, 39 L. Ed. 620. It appears that shortly preceding the collision the navigators of the Georgia observed the lights of the schooner Elwell on her port bow, just in time, by stopping and reversing and swinging to starboard, to avoid a collision with her; and it was after this occurrence, and as the Georgia was swinging back to port to regain her course, and before any headway of consequence had been gained, that she collided with the Cramp on her starboard side, then lying immediately across her course. Had the Cramp given the proper fog signal, the collision with her would easily have been avoided after the Georgia had passed the Elwell and practically come to a standstill.

It follows from what has been said that this collision was caused solely by the fault of the schooner Henry W. Cramp, and a decree may be entered so determining.