## THE CITY OF PORTSMOUTH.

(Circuit Court of Appeals, Fourth Circuit. January 5, 1906.)

### No. 596.

1. COLLISION—CONTRIBUTORY FAULT—WANT OF LOOKOUT.

Where a ferryboat navigating the river between Portsmouth and Norfolk, Va., on a dark night had no lookout, and master and the man at the wheel, who were the only persons on deck, failed to see the towing lights of a tug with a tow on each side until within a distance of 50 feet, such ferryboat is chargeable with contributory fault for a collision between her and one of the tows, although the tug was primarily in fault.

2. SAME—SUIT FOR DAMAGES—ISSUES AND PROOF.

Upon an issue as to the fault for a collision between a ferryboat and a barge which had previously gone adrift and had been picked up by a tug

and was then in tow, the question of fault or negligence in allowing the barge to go adrift is immaterial.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk.

On September 18, 1903, about 2:30 a. m., the steam ferryboat City of Portsmouth, on a regular trip from Portsmouth to Norfolk, collided with barge No. 21, which, together with barge No. 17, was being towed by the steam tug Apollo. Both the barges and the steam tug belonged to the appellant, the Merchants & Miners Transportation Company. The two barges, during the early part of the night, had been moored at one of the appellant's docks on the Norfolk side of the river, but about 2 o'clock in the night they had been moved by the tug in order to permit the appellant's steamship Chatham to be berthed in the dock where they had been moored. The steamship collided with them and they had broken adrift. There was a strong wind from the north and a strong flood tide from the same direction, and the barges were carried up the harbor. The tug went to the assistance of the barges and made fast to them by pushing her bow in between them and attaching her bow lines to them near their forward ends. She had gotten them under control and was heading on an northeasterly course with some slight headway when the collision happened. The ferryboat was heading in a northerly direction and the port bow of the ferryboat struck the starboard quarter of the barge, which was on the starboard side of the tug. The ferryboat was injured and her owners filed this libel. The District Court found the tug and the tow solely in fault and decreed in favor of the owners of the ferryboat for the sum of $2,421.50.

Robert M. Hughes, for appellant.
Floyd Hughes, for appellee.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge (after stating the facts). The barges were ordinary harbor lighters for moving merchandise, square at both ends and housed over, having a length of 130 feet and width of 28 feet. When they broke adrift they had no one on board and no lights, and, when they were placed one on each side of the tug, the tug's sidelights could not be seen from the ferryboat. It is alleged on behalf of the respondents that there was a lantern with a white light placed on the after end of the starboard barge. As to this light the testimony is so contradictory that it is not possible to make a satisfactory finding either way, but it is certain that the light was not seen by those on the ferryboat. The proof is conclusive that the navigators of neither vessel saw the other until the collision was inevitable. Those on the ferryboat did not see the barges until within 50 feet in distance and a few seconds apart in time, and those on the tug did not see the ferryboat at all until she had struck them. There can be no question as to the fault of the tug. Her own side lights were obscured and there were no side lights on the barges. Her towing lights were not placed according to law and she was without a proper lookout. These omissions are accounted for by the fact that she was obeying a hurry call to rescue the barges when they broke adrift, but as these omissions contributed to the collision, the explanation does not exculpate her from liability for the damage sustained by the ferryboat. The District Court found the tug solely in fault, and the question whether there was also fault on the part of the ferryboat has given us grave consideration.

Shortly before the collision, the tug had got control of the barges somewhere off one of the docks of the Seaboard Air Line Railway on the Portsmouth side of the harbor and had headed them toward Norfolk in a northeasterly direction. The ferryboat had come out of her Portsmouth slip and was on her regular course for Norfolk, heading about north, in order to countervail the strong wind and tide. She was making her usual speed of about 10 miles an hour. The master and a deck hand, who was helping the master to handle the wheel, were in the pilot house on the ferryboat, and there was no one else on the lookout. They testify that the night was dark, with a strong N. N. W. breeze; that when they were not quite half way across to the opposite shore they discovered a barge directly ahead without lights. The captain at once ordered the engine reversed and the helm hard aport, but before either order could have effect, the collision occurred. The ferryboat's port bow struck the starboard barge either on the left starboard corner or a few feet forward of the corner and drove the barge forward with a glancing blow, breaking it loose from the tug. The master and man at the wheel first saw the barge ahead, and, in a second or two afterwards, they, for the first time, saw the tug's towing lights on her flagstaff, which appeared to them a little ahead on the port side of the ferryboat. The captain explains his not seeing the tug's towing light earlier by saying he must have confused it with the lights of vessels ahead lying over on the Norfolk side, which confusion was aided, he says, by the fact that the tug's towing lights, by reason of improper construction, appeared to him, he testifies, as one single light, instead of two vertical lights. It is true the two lights were not hung vertically one above the other, as required by law, but were hung from the ends of a three-foot crosspiece on the flagstaff, and were intended to be one lower than the other, although not one directly under the other. This improper arrangement of the lights is sufficient to put the tug in fault, but it is not sufficient to exculpate the ferryboat if the lights could have been seen by a vigilant lookout, and should have warned the ferryboat that there was a vessel ahead of her which she should watch in order to avoid a collision. Undoubtedly these lights were showing on the tug's flagstaff. They were plainly visible either as one light or as two from the ferryboat's pilot house. A careful observation of them would have disclosed that they were not on any stationary vessel near the Norfolk wharves, which were more than a quarter of a mile away. That the lights were not seen at all until after the dark body of the barge was seen within 50 feet is proof that the lookout on the ferryboat was not vigilant and effective. The darkness, the fact that it is expected that few vessels will be moving in the harbor at half-past 2 o'clock in the night, the difficulty of getting and keeping the ferryboat on her course with a heavy wind and a strong tide carrying her toward the Berkley shore, all these elements of the situation which was engaging the attention of the two men who were handling the wheel, may tend, in some measure, to explain the failure to observe the tug's towing lights, but they do not excuse it.

In argument some stress was put by counsel for the ferryboat on the circumstances which led to the barges getting adrift, and it was urged

that the primal fault lay with respondent's employés in so placing the barges that the steamer Chatham broke them from their moorings. We think this is immaterial. No matter by whose fault the barges went adrift, the barges and the tug had a right to navigate the channel of the river where the collision happened, and the ferryboat was bound to have due regard to all the rules for safe navigation and to all dangers of navigation and collision in respect to the tug and barges without any reference to the original occasion of their being there. The Sunnyside, 91 U. S. 208-216, 23 L. Ed. 302. If those in charge of the ferryboat had observed the tug's towing light as soon as it might reasonably have been seen by a vigilant lookout, there would have been no difficulty in avoiding the collision, no matter whether the tug was on a crossing course or was the overtaken vessel. It would have been obvious before the ferryboat had approached the light to within a distance of immediate danger that to avoid a collision the ferryboat must stop and reverse or change her course.

We are constrained to think that the proofs show that the ferryboat was not free from fault in that she did not maintain a vigilant outlook and did not sooner discover the tug's towing lights, and that the decree of the District Court should be so modified as to divide the damages.

Decree modified.