### THE ALICE M. GUTHRIE.

### THE ANSON M. BANGS.

#### (District Court, E. D. Virginia. April 23, 1919.)

1. COLLISION ⬅75—LIGHTS—"MOTORBOATS."
   A vessel 87 feet long, propelled partly by sail and partly by gasoline engines, is not a motorboat, within Act June 9, 1910, § 1 (Comp. St. § 8277), defining motorboats as vessels propelled by machinery, not more than 65 feet long, and is not governed by section 3 (8279) of that act, providing that motorboats, when propelled by sail and machinery, need not carry the white lights required by the section.

2. COLLISION ⬅75—LIGHTS—"STEAM VESSEL."
   A vessel more than 87 feet long, propelled partly by sail and partly by gasoline engines, is a steam vessel, within Inland Navigation Rules (Comp. St. § 7873), prescribing that every vessel under steam, whether under sail or not, is a steam vessel, and that the term "steam vessel" shall include any vessel propelled by machinery, and as such was required by article 2 of those rules to carry white masthead lights.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Steam Vessel.]

3. COLLISION ⬅40, 75—LIGHTS OF STEAM VESSEL—STEAM VESSELS MEETING.
   An auxiliary schooner, propelled by sail and machinery, and a steam tug, both *held* at fault for a collision occurring at night just outside Cape Henry; the schooner for failure to carry the white masthead light required of her as a steam vessel, and the tug for gross negligence of her navigator in starboarding after discovering the presence of the schooner on her port bow.

4. COLLISION ⬅77—LIGHTS OF STEAM VESSEL—LOOKOUT.
   A steam vessel, failing to carry lights prescribed by inland navigation rules, cannot insist on too rigorous an enforcement of the obligation of other vessels to maintain a lookout.

In Admiralty. Libel by Tobias Johnson, as master of the auxiliary schooner Alice M. Guthrie, against the steam tug Anson M. Bangs, to recover for damages sustained by the sinking of the schooner after collision with the tug. Decree rendered, holding both vessels jointly liable.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Edward R. Baird, Jr., of Norfolk, Va., for libelant.

Macklin, Brown & Purdy, of New York City, and Hughes, Vandeventer & Eggleston, of Norfolk, Va., for respondent.

WADDILL, District Judge. This libel is to recover for damages sustained by the sinking of the auxiliary schooner Alice M. Guthrie, 88 tons gross, 87 feet long, 22 feet beam, 9 feet deep, in a collision with the steam tug Anson M. Bangs, 101 feet long, 23 feet beam, 12.2 feet deep. The collision occurred on Sunday night, June 2, 1918, a short distance outside of Cape Henry, near the gas buoy, a little before 10 o'clock. The weather was good and clear, but a thunderstorm was approaching. The Guthrie was propelled in part by sail and in part by machinery, and at the time of the collision her mainsail had been lowered, but the foresail and forestaysail were set.

The contention of the libelant is that, as the Guthrie rounded the gas buoy off Cape Henry, inward bound, on a course west by north, she discovered some two miles away, outward bound, the lights of the tug, and subsequently, when about a mile away, the red light of the tug, bearing on her port bow, the vessels being port to port; that the red and green lights of the Guthrie were properly set, and burning brightly; that she had no white masthead light, being forbidden as a sailing vessel from exhibiting the same; that she maintained her course and speed; that the Bangs changed its course, so as to show first her red and then her green light to the schooner's red light, and then steadied her wheel, and bore directly down upon the schooner, striking her on the port side at practically right angles, puncturing her hull several feet, from which she quickly sank; the schooner, her cargo, and the effects of the officers and crew proving a total loss. Libelant further insists that the absence of the masthead light in no manner contributed to the collision, and that the Bangs, a steam vessel, charged with the duty of avoiding even the risk of collision, was being navigated by incompetent navigators, without a lookout, and proceeding at undue speed, and was solely at fault for bringing about the disaster.

The respondent alleged that, on the night and at the time of the collision, the Anson M. Bangs was properly equipped and manned, and had her lights properly set and burning brightly; that, having passed through the submarine net at Cape Henry, proceeding at about 10 miles an hour, on a course due east, the weather clear, but with signs of an electrical storm coming up, about 9:50 o'clock, her navigator observed through the flashes of lightning on her port side, and almost dead ahead, a dark object, appearing to be the sails of a vessel, and quickly thereafter, and very close aboard, a red light, which afterwards proved to be the port light of the Guthrie, which up to that time had been obscured and not visible to those on the Bangs; that the Guthrie had some of her sails up, and was being propelled by two 36 horse power gasoline engines, and was a steam vessel within the meaning of the navigation laws of the United States; that she carried no masthead light; that the engines of the tug were immediately stopped and reversed full speed astern, and continued backing until

the collision; and that the accident was not caused by or contributed to by any neglect or fault on the part of the tug, or those in charge of her, and was brought about solely by the neglect and fault of those navigating the Guthrie.

In the view of the court, it will not be necessary to pass upon many of the faults assigned by the parties one against the other, but only to determine several of the more important charges; that is, whether the Guthrie was a sail or steam vessel, and, if the latter, whether she was required to have a masthead light properly set and burning, and the effect of her navigating, under the facts of this case, without the same, and whether those navigating the Bangs were guilty of negligence which contributed to the collision, assuming the Guthrie to have been in fault in the particulars charged. These will be considered in the order named.

[1] 1. Does the Guthrie come within the terms of Motorboat Act June 9, 1910, c. 268, 36 Stat. 462 (Comp. St. §§ 8277–8281, 8283–8286)?

The enacting clause of this act, as well as section 2, class 3, in effect provides that the word "motorboat" shall include every vessel propelled by machinery and not more than 65 feet in length. The proviso to the third section of the act is that motorboats, as defined by the act, when propelled by sail and machinery, or under sail alone, shall carry colored lights, suitably screened, but not the white lights, prescribed by this section. It is insisted under this proviso, although the Guthrie at the time of the collision was being propelled by both sail and machinery, that she was not required to use the white lights prescribed by the act, but only the red and green running lights.

The court cannot concur in this view. The language of the proviso, "motorboats as defined in this act," means vessels under 65 feet in length, and does not apply to a vessel like the Guthrie, which is 87 feet long.

[2] 2. The Guthrie, not being a motorboat within the terms of the act, is subject to the laws regulating vessels propelled by machinery, as distinguished from sail vessels. The "preliminary definitions" of the regulations regarding steam and sail vessels, are as follows:

" * * * Every steam vessel which is under sail and not under steam is to be considered a sailing vessel, and every vessel under steam, whether under sail or not, is to be considered a steam vessel. The words 'steam vessel' shall include any vessel propelled by machinery." Inland Rules of Navigation (Act June 7, 1897, c. 4) § 1, 30 Stat. 96 (Comp. St. § 7873).

This definition in terms prescribed that every vessel under steam, whether under sail or not, is to be considered a steam vessel, and the words "steam vessel" shall include any vessel propelled by machinery. Article 2 of the Inland Rules of Navigation prescribes the masthead lights to be carried by steam vessels, as follows:

Article 2: "A steam vessel when under way shall carry— (a) On or in front of the foremast, or, if a vessel without a foremast, then in the fore part of the vessel, a bright white light so constructed as to show an unbroken light over an arc of the horizon of twenty points of the compass, so fixed as to throw the light ten points on each side of the vessel, namely, from right ahead to two points abaft the beam on either side, and of such a character as to be visible at a distance of at least five miles." Comp. St. § 7876.

In the light of this rule, and the definition mentioned, it seems entirely clear that the Guthrie, at the time of and prior to the collision, should have exhibited a white masthead light, as well as the red and green running lights.

[**3, 4**] 3. The failure of the Guthrie to conform to this rule prescribed for her navigation makes her liable, or at least in part liable, for the disaster, unless it shall appear that her failure in that respect did not and could not have contributed thereto. It is admitted that at the time of the collision she was being navigated in part by steam and in part by sail, that her sails had been taken in and furled with the exception of the foresail and forestaysail, and that the latter was being furled. It cannot be said that the failure to expose the white light may not have contributed to the collision, since it is manifest that those navigating the Bangs only observed the presence of the Guthrie when in close proximity to her. Whether they should have seen her earlier is not so apparent; but as the Guthrie was clearly at fault in failing to do what was required of her, to notify others of her presence, she cannot be heard to insist upon too rigorous enforcement of obligations on their part. Foster v. Merchants' & Miners' Transportation Co. (D. C.) 134 Fed. 964, 969; Baltimore Steam Packet Co. v. Coastwise Transportation Co. (D. C.) 139 Fed. 777, 779.

4. In the view taken by the court of the testimony, the navigators of the Bangs were guilty of gross negligence in the navigation of their vessel after the presence of the Guthrie was known to them, if not, indeed, for their failure to see her earlier; and their conduct, after the presence of the vessel became known, was so culpable, that they should not be excused on account of error in extremis. From their own testimony, the evidence of their navigator and lookout, they appear clearly to have been at fault after the presence of the schooner was known. The mate in charge of the navigation should have acted promptly upon being advised by the lookout, who was also in the pilot house, of the dark object ahead, and when the red light appeared ahead on his port to have insisted upon starboarding, and running into the oncoming vessel, over the protest of the lookout, who seized the wheel and attempted to port the same, was inexcusable.

It follows, from what has been said, that the vessels collided as the result of their joint negligence, and are jointly liable for the disaster, and should be so held.